**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**FRANCES RENEE MILLER/PERRY**
**ADC #708998**                                                              **PLAINTIFF**

**V.**                            **CASE NO. 1:07CV00034 SWW/BD**

**CORRECTIONAL MEDICAL SERVICES,** *et al.*                  **DEFENDANTS**


**RECOMMENDED DISPOSITION**

**I.**   **Procedure for Filing Objections:**

The following Recommended Disposition has been sent to United States District

Judge Susan Webber Wright.  Any party may file written objections to this

recommendation.  Objections should be specific and should include the factual or legal

basis for the objection.  If an objection is to a factual finding, specifically identify that

finding and the evidence that supports your objection.  An original and one copy of your

objections must be received in the office of the United States District Court Clerk no later

than eleven (11) days from the date you receive the Recommended Disposition.  A copy

will be furnished to the opposing party.  Failure to file timely objections may result in

waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.   <u>Introduction</u>:

Plaintiff Frances Renee Miller-Perry, an inmate at the McPherson Unit of the

Arkansas Department of Correction ("ADC"), filed this *pro se* action under 42 U.S.C.

§ 1983 on July 16, 2007.  Plaintiff filed an Amended Complaint (#11) on August 25,

2007, and a Second Amended Complaint (#38) on January 24, 2008.  Now pending is

Defendants' Motion for Summary Judgment (#123).  Plaintiff has responded (#129).

The Court held an Evidentiary Hearing on January 14, 2009, to give Plaintiff an

opportunity to question the Defendants and supplement her response to the motion for

summary judgment.  Considering all the evidence now in the record, Defendants' motion

for summary judgment (#123) should be GRANTED, and this action should be

DISMISSED WITH PREJUDICE.

## III.   <u>Summary Judgment Standard</u>:

Summary judgment is appropriate when there is no genuine issue of material fact,

and the moving party is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(c).  The

Supreme Court has established guidelines to assist trial courts in determining whether this

standard has been met:

> The inquiry performed is the threshold inquiry of determining
> whether there is the need for a trial - whether, in other words,
> there are any genuine factual issues that properly can be
> resolved only by a finder of fact because they may reasonably
> be resolved in favor of either party.

2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986).  In reviewing a motion for summary judgment, the Court must view the facts in a light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from the record.  *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980).

The moving party bears the initial burden of identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact.  *Webb v. Lawrence County*, 144 F.3d 1131, 1134 (8th Cir. 1998).  This burden may be discharged by showing that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986).  Once the moving party carries this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Inc. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).

> When a motion for summary judgment is made and supported
> as provided in this rule, an adverse party may not rest upon
> the mere allegations or denials of the adverse party's
> pleadings, but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific facts
> showing that there is a genuine issue for trial.  If the adverse
> party does not so respond, summary judgment, if appropriate,
> shall be entered against the adverse party.

FED.R.CIV.P. 56(e).  The judge does not weigh the evidence, but rather determines whether there is a genuine issue for trial.  *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

> [T]here is no issue for trial unless there is sufficient evidence
> favoring the nonmoving party for a jury to return a verdict for
> that party.  If the evidence is merely colorable, or is not
> significantly probative, summary judgment may be granted.

*Id*. at 249-250.

## IV.   <u>Background</u>:

Plaintiff alleges that Defendants were deliberately indifferent to her serious

medical needs in violation of the Eighth Amendment.  Specifically, Plaintiff alleges

Defendants failed to provide timely medical treatment for a right arm injury.  The

remaining Defendants in this case are Correctional Medical Services, Inc. ("CMS"), Dr.

Donald Anderson, and James Pratt.  CMS is the ADC contracted health care provider.

Dr. Donald Anderson is a CMS contracted physician.  James Pratt is a Health Services

Administrator for CMS.  During the Evidentiary Hearing, Plaintiff moved to dismiss

Defendant Pratt.  The Court recommended that Plaintiff's oral motion to dismiss be

granted (#153).

Plaintiff testified during the Evidentiary Hearing that she sued CMS because CMS

should be held responsible for the acts of its employees.  Regarding Dr. Anderson,

Plaintiff stated that she disagreed with his course of medical treatment.

## V.   <u>Discussion</u>:

Plaintiff's only claim in this matter is for deliberate indifference to a right arm

injury.  The Eighth Amendment to the United States Constitution prohibits the infliction

of cruel and unusual punishment.  *Jenson v. Clark*, 94 F.3d 1191 (8th Cir. 1996).

4

Deliberate indifference by prison personnel to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component.  *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).  Inmates must demonstrate (1) that they suffered objectively serious medical needs, and (2) that the prison officials actually knew of but deliberately disregarded those needs.  *Id.*  A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Id.* at 778.

Plaintiff has had an extensive medical history during her time in the ADC.  She has been seen by nursing staff at least 56 times in the past two years for various complaints (#125, ¶45).  She has been seen by Dr. Anderson or another mid-level provider at least 35 times in the past two years (#125, ¶46).  A large number of the visits with medical staff relate to Plaintiff's right wrist and arm injuries.

On February 13, 2007, Plaintiff's right wrist and arm were injured during an altercation with security.  After the altercation, Plaintiff was seen by Janet Tiner, RN.  Nurse Tiner noted no signs or symptoms of injury, other than slightly red wrists.  Later the same day, Nurse Tiner was informed that Plaintiff had a knot on her right hand that was not present earlier (#125, ¶13-14).  The next day, February 14, 2007, x-rays were

5

taken of Plaintiff's right hand and wrist; both x-rays reflected normal conditions in Plaintiff's wrist and hand (#125, ¶15).

On February 19, 2007, an LPN making pill call rounds noticed that Plaintiff had a bruised right hand, wrist and forearm, as well other injuries. She instructed Plaintiff to file a sick call request and reported her observations (#125, ¶16).  On February 20, 2007, Dr. Anderson reviewed Plaintiff's sick call and ordered that x-rays be repeated the following day.  On February 21, 2007, Dr. Anderson examined Plaintiff and observed that her right wrist and hand were swollen and that her fingers were bruised.  He diagnosed Plaintiff with a contusion of the wrist and a hand sprain and prescribed high-dose ibuprofen (#125, ¶18).  The follow-up x-ray did not evidence a fracture of the right hand.  On February 23, 2007, Dr. Anderson examined Plaintiff again and explained that her hand injury would take a month or two to heal (#125, ¶20).

On March 13, 2007, Plaintiff submitted another sick call request relating to her wrist and hand injury.  On March 16, 2007, Nurse Tiner saw Plaintiff and noted no change in the wrist injury (#125, ¶21).[1]  On April 2, 2007, Plaintiff was examined by Dr. Anderson.  He noted that her wrist pain had significantly improved; the swelling was down; and the fingers of both hands flexed properly without any significant deficit (#125,

---

[1]Plaintiff initially testified at the hearing that she was involved in an altercation around this time that resulted in a wrist fracture.  Plaintiff later confirmed that the altercation resulting in the wrist fracture occurred in March of 2008, not 2007 (#129, ¶2). The March 2007 sick call, therefore, was apparently related to the injury Plaintiff suffered in the February, 2007 altercation with staff.

¶22).  Dr. Anderson advised Plaintiff that her injury should continue to improve, and he

renewed her ibuprofen prescription.

On May 6, 2007, Plaintiff submitted another sick call relating to her right arm.

Nurse Tiner saw Plaintiff on May 8, 2007, and noted a knot on Plaintiff's right wrist, but

Plaintiff retained full range of motion, and there was no swelling (#125, ¶23).  Nurse

Tiner referred Plaintiff to the physician.  On May 10, 2007, Dr. Anderson examined

Plaintiff after the referral and noted a lump on Plaintiff's arm consistent with a ganglion

cyst.  He told Plaintiff that they would continue to monitor the cyst (#125, ¶24).

On May 29, 2007, Plaintiff submitted another sick call relating to her right wrist

and arm.  Nurse Tiner saw Plaintiff and noted no swelling or discoloration, full range of

motion, and a small, pea-sized bump on the top of Plaintiff's right wrist.  On June 11,

2007, Plaintiff was a walk-in to the infirmary complaining of pain in her right hand and

arm.  Plaintiff's knuckles were mildly swollen without redness, and she was able to move

all digits and her wrist.  Plaintiff was instructed to continue the ibuprofen as needed for

swelling and pain (#125, ¶26).

On June 16, 2007, Plaintiff submitted another sick call relating to her hand.  Nurse

Tiner saw Plaintiff on the 19th and noted that Plaintiff had full range of motion with no

symptoms of pain or discomfort, no deformity, no swelling and no discoloration.  On July

2, 2007, Plaintiff was involved in another altercation with security and an LPN was called

to assess Plaintiff's injuries.  Plaintiff's wrists were red, but there was no swelling;

Plaintiff was able to move both wrists without difficulty (#125, ¶28).  On July 16, 2007,

Plaintiff filed this action alleging deliberate indifference to her serious medical needs

(#2).

On September 18, 2007, Plaintiff's ibuprofen prescription was renewed.  On

October 19, 2007, Plaintiff was involved in another altercation.  An LPN was called to

assess Plaintiff and noted bruised right fingers which Plaintiff said were hurt because she

would not let go of her bunk.  Redness was also noted around both wrists (#125, ¶30).

On November 7, 2007, Plaintiff submitted a sick call regarding her right arm and

the expiration of various medications and restrictions.  Plaintiff was seen on the 13th of

November and exhibited normal range of motion with no redness, swelling, or warmth.

During this visit, it was noted that Dr. Anderson reviewed Plaintiff's medical jacket and

renewed her restrictions (#125, ¶31).

On December 24, 2007, Plaintiff was involved in another altercation, and Nurse

Tiner was called to segregation to evaluate the Plaintiff.  Nurse Tiner noted areas of

discoloration on Plaintiff's upper right arm, right leg, and red indentations around both

wrists.  Plaintiff had full range of motion in her hands and fingers (#125, ¶32).

At some point in March of 2008, Plaintiff was involved in another altercation with

security.  On April 11, 2008, Plaintiff saw Dr. Anderson for right wrist pain due to an

injury suffered through the food trap door, apparently during the March altercation.

Plaintiff's wrist was tender to palpation over the distal radius and ulna, with pain on

flexion.  Dr. Anderson prescribed naproxen and ordered an x-ray (#125, ¶33).  An x-ray was taken of Plaintiff's right wrist on April 25, 2008, and the radiologist identified a scaphoid fracture.  On May 7, 2008, Dr. Anderson requested navicular views of Plaintiff's right wrist.  Plaintiff was sent to a consulting orthopedic physician, Dr. Garbutt, who noted a remote fracture of the right scaphoid with necrosis (a broken blood vessel) of the proximal pole (#125, ¶35).

On May 12, 2008, Dr. Anderson submitted a consultation request for Plaintiff to be evaluated by Dr. Garbutt for surgical repair.  The following day, Dr. Roland Anderson and Defendant Dr. Donald Anderson discussed Plaintiff's case and agreed to treat the fracture conservatively and have the orthopedist evaluate the removal of the ganglion cyst (#125, ¶36).  Dr. Garbutt did not recommend scaphoid surgery due to a very low success rate and prolonged physical therapy (#125, ¶37).  Dr. Anderson noted that a consultation would be scheduled for the ganglion cyst so a brace could be prescribed for pain management of the scaphoid fracture.

On June 24, 2008, Dr. Garbutt determined that the swelling on the back of Plaintiff's wrist was not a ganglion, "just a diffuse mushy swelling. . . ."  Dr. Garbutt diagnosed Plaintiff with synovitis, a form of tendonitis, with suggestions for conservative or surgical treatment.  Dr. Anderson then prescribed Plaintiff a wrist brace and naproxen (#125, ¶38).

On August 6, 2008, Plaintiff was evaluated by Dr. Anderson in the chronic care clinic.  Plaintiff complained of wrist pain after doing push-ups and pull-ups.  Plaintiff had full range of motion without pain or swelling, and Dr. Anderson advised Plaintiff to stop doing push-ups and pull-ups if it bothered her wrists (#125, ¶39).

Dr. Anderson opined that Plaintiff had recurrent tendonitis which should be treated with ibuprofen or naproxen and rest (#125, ¶42).  Plaintiff has had almost continual prescriptions for ibuprofen, then naproxen, for her arm and wrist complaints since her first wrist injury (#125, ¶44).  Although Plaintiff does not have a ganglion cyst as assessed, according to Dr. Anderson, she still would have received the same treatment for an earlier diagnosis of tendonitis (#125, ¶48).  After diagnosing Plaintiff with tendonitis, Dr. Garbutt recommended Plaintiff continue with the medication she was already taking (#129, ¶3).

The record establishes continuous evaluation and treatment of Plaintiff's right arm and wrist injury.  During this treatment, it appears Dr. Anderson incorrectly diagnosed Plaintiff with a ganglion cyst, which Dr. Garbutt diagnosed as tendonitis.  This apparent mistake is insufficient to establish deliberate indifference, especially considering the uncontroverted assertion that Plaintiff would have received the same treatment for tendonitis as she did for the suspected ganglion cyst.

Plaintiff also challenges the delay in getting a brace for her wrist fracture.  It is clear from the record that Plaintiff did not fracture her wrist until well after she filed this

lawsuit.  It is also clear that the healing process has been disrupted by the numerous

physical altercations Plaintiff has had with security.  Regardless, Plaintiff has failed to

show that any alleged delay in treatment rose to the level of a constitutional violation.

Plaintiff's wrist brace was prescribed in concert with Dr. Garbutt's evaluation.  To show

detrimental effect of delay in medical treatment, Plaintiff must provide evidence that

Defendants ignored an acute or escalating situation or that delays adversely affected her

prognosis.  *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995) (citations omitted).  The

record is devoid of any such evidence.

    In addition to the delay in getting a wrist brace, Plaintiff testified that she

sometimes had to wait 2-3 days for treatment after submitting a sick call request, and that

she had to wait nine days from her initial injury before Dr. Anderson prescribed pain

medication (#129, ¶7).  Plaintiff attributes part of this delay to Nurse Tiner's alleged

refusal to document her injuries after Plaintiff's February 13, 2007 altercation (#129, ¶4).

Nurse Tiner is not a Defendant in this matter.  The record shows that Nurse Tiner

evaluated Plaintiff immediately after her initial injury on February 13, 2007.  Plaintiff

submitted a sick call request on the night of February 19, 2007.  On February 20, 2007,

Dr Anderson reviewed the sick call and the next day he prescribed Plaintiff high-dose

ibuprofen for pain and swelling.  There is no evidence that Dr. Anderson was aware of

Plaintiff's injuries until he reviewed Plaintiff's sick call on February 20, 2007.  The very

next day he prescribed Plaintiff pain mediation.  Considering the extent of Plaintiff's

injuries, this delay is insufficient to establish an Eighth Amendment violation.

During the evidentiary hearing, Plaintiff admitted that she has received treatment

for her wrist injury, but stated that she disagreed with the course of treatment provided by

Dr. Anderson.  It appears Plaintiff's injury has improved little or, as Defendants contend,

has recurred due to use.  It is understandable that Plaintiff would want to try a different

course of medical treatment.  Disagreement with treatment decisions, however, does not

rise to the level of a constitutional violation.  *Estate of Rosenberg*, 56 F.3d at 37.

During the evidentiary hearing, Plaintiff testified that she had recently seen a

second orthopedic physician who recommended bone fusion surgery for Plaintiff's wrist

if the problem persists.  Plaintiff is scheduled to be released from the ADC soon and

wants CMS either to schedule the surgery before her release, or to pay for the surgery

after her release.  After reviewing the record, it is clear that the wrist fracture leading to

the proposed surgery occurred well after Plaintiff filed this action.  It is possible,

however, that Plaintiff's initial injury contributed to the current condition of her wrist.

Plaintiff is again contesting the potential delay in treatment.  As noted, to present a

constitutional claim for delay in treatment Plaintiff must show Defendants ignored an

acute or escalating situation or that delays adversely affected her prognosis.  *Reece*, 60

F.3d at 491.  Again, Plaintiff has not made this showing, particularly in light of the

testimony that the surgery is essentially elective and that a delay will not adversely affect

12

Plaintiff's condition. *Grundy v. Norris*, 26 Fed.Appx. 588, 590, 2001 WL 1345632, 1

(8th Cir. 2001) (unpublished) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir.

1999).

      After a thorough review of the record, and viewing the facts in a light most

favorable to Plaintiff, it is clear she cannot present evidence to support an Eighth

Amendment claim against either CMS or Dr. Anderson.  Plaintiff cannot hold CMS liable

under a theory of *respondeat superior*.  See *Vaughn v. Greene County, Ark.*, 438 F.3d

845, 851 (8th Cir. 2006) (citations omitted) (affirming that the doctrine of *respondeat*

*superior* is inapplicable to section 1983 claims).  Dr. Anderson's conduct, if it can be

faulted, does not approach deliberate indifference.

      While the condition of Plaintiff's wrist has not healed, this is not due to lack of

attention from medical personnel.  The record establishes that Plaintiff has endured some

short delays in medical attention.  In addition, Plaintiff was incorrectly diagnosed with a

ganglion cyst instead of tendonitis.  Based on these facts, however, it would be difficult

for Plaintiff to establish medical negligence by the Defendants; and even gross negligence

is insufficient to establish deliberate indifference under the Eighth Amendment.  See *Jolly*

*v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir.2000) (inmates must show more than even

gross negligence).

      Defendants have carried their burden by presenting evidence entitling them to

judgment as a matter of law.  Plaintiff has failed to establish that there is a question of

material fact for a jury to decide.  Accordingly, this action should be dismissed with prejudice.

## VI.    **Conclusion**:

The undisputed record establishes that Defendants are entitled to judgment as a matter of law.  Accordingly, the Court recommends that the Defendants' motion for summary judgment (#123) be GRANTED, and this action be DISMISSED WITH PREJUDICE .

DATED THIS 26th day of January, 2009.


_____

UNITED STATES MAGISTRATE JUDGE